DOUCET, Judge.
This case arises out of an automobile accident. On May 31, 1990, Wesley Des-latte was driving down Horseshoe Drive in Rapides Parish in a pickup truck owned by Frank Sanders. He crossed the center line and struck an oncoming car driven by Timothy Smith and occupied by Jesse Brum- *877 field, Brian Singleton, and Javier Hinojosa. Timothy Smith and the occupants of his car sustained numerous injuries ranging from minor to substantial, and filed suit against United Services Automobile Association (USAA), as insurer for Frank M. Sanders; USAA as insurer for Clifford Leo Deslatte; Nationwide Mutual Insurance Company (Nationwide), as the uninsured/underin-sured carrier of the automobile owned by Timothy Smith; Frank M. Sanders; and Clifford Leo Deslatte as the administrator of the estate of his minor child, Wesley Deslatte. At the conclusion of plaintiffs’ evidence, Frank M. Sanders was dismissed pursuant to a motion for directed verdict. After trial by jury, a verdict was rendered finding that Wesley Deslatte had permission, expressly or impliedly, to drive the Sanders vehicle, and awarding damages to the plaintiffs. USAA appealed. Plaintiffs cross-appealed.
PERMISSION ISSUE
Defendant, USAA, argues that the jury erred in finding that Wesley Deslatte (Wes) had a reasonable belief that he was entitled to use the Sanders vehicle.
The law which covers the permission issue is delineated in Francois v. Ybarzabal, 483 So.2d 602 (La.1986), as follows:
Louisiana has two jurisprudential standards for permission, depending on whether coverage of car or driver is involved, i.e., coverage which follows the car versus coverage which follows the driver. They are correctly distinguished in Johnson v. Aetna Casualty and Surety Co., 274 So.2d 769 (La.App. 3 Cir.1973), which was followed by Employers Commercial Union Insurance Company v. Bertrand, 306 So.2d 426 (La.App. 3 Cir.1975).
Id. at 604. The jurisprudential standard for permission which involves the driver depends upon the “non-owned” automobile clause of the policy under which the driver is covered. For Wes to be covered by his father’s USAA policy, he would have had to be using the Sanders vehicle with a “reasonable belief” that he was entitled to do so.
“Reasonable belief” indicates a subjective standard of determining permission, so that a permittee could be covered if he reasonably believed that he had permission of the owner, transmitted through another permittee, whether or not such other permittee had actual authority to transmit permission. Johnson v. Aetna Casualty & Surety Co., 274 So.2d 769 (La.App. 3rd Cir.1973).
Employers Commercial Union Ins. Co. v. Bertrand, 306 So.2d 426, 429-430 (La.App. 3 Cir.1975).
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable, (citations omitted)
Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Given the totality of the circumstances, we find that the jury could have reached the determination that Wes reasonably believed he had permission to drive the Sanders truck. The record is replete with testimony that Wes and Mike Sanders (Mike) enjoyed a very close relationship. They lived two doors apart and frequently spent the night together. Their relationship was such that they borrowed from one another without asking.
Mr. Sanders testified that his son, Mike, had primary use of the truck. He opined that Mike knew that he was not to lend the truck to others. Mr. Sanders admitted that he never told Wes not to use the truck and that he never told Mike not to let Wes use the truck. Further, Mr. Sanders admitted that he would allow both boys access to move the truck when the three traveled to Willianna Forest to cut wood. He further confirmed that he knew Mike let Wes drive the truck in “controlled conditions” but *878 stressed that Mike knew he was not to lend the truck to Wes on a public road.
On the day of the accident, Mike and Wes drove to McDonald’s where Mike was employed. Mike parked the truck, leaving the lights on, went inside, and began his shift. Then, he gave the keys to Wes to turn off the headlights. Shortly thereafter, Wes drove off in Mike’s truck and picked up Lance Smith. Wes and Lance returned to McDonald’s. Wes went in McDonald’s while Lance remained in the truck. Wes then returned to the truck and as he was taking Lance home, the accident occurred.
It is Mike’s testimony that, on the day of the accident, Wes asked to borrow Mike’s truck and Mike said no. Mike stated that he didn’t allow others to drive the truck on public streets and further, that he knew Wes didn’t have a license. Mike confirmed, however, that he never asked Wes to return his keys after turning off the lights. He also confirmed that he took no action to locate his truck, which was not in the McDonald’s parking lot when he went on break at around 9:00 p.m. Wes could not testify at trial because he suffered brain damage as a passenger in a subsequent automobile accident. However, the record contains two statements made by Wes which were taken by adjusters for USAA. In both statements Wes declared that he did not think Mike knew he was taking the truck. •
Although Mike and Wes stated that Wes had not driven Mike’s truck in the past, the testimony of Lance Smith indicates otherwise. Lance Smith was a passenger in the Sanders vehicle when the accident occurred, and a friend of both Wes and Mike. Lance confirmed that he had seen Wes drive Mike’s truck on roadways before the date of the accident, and that he had heard Mike tell Wes he could drive the truck.
The jury did not err in finding that Wes reasonably believed he had permission to drive the Sanders vehicle.
QUANTUM OF DAMAGES
The Louisiana Supreme Court in Reck v. Stevens, 373 So.2d 498 (La.1979) outlined the standard for appellate review of damage awards.
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
Id. at 501.
“The law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court’s examination of the facts reveals a clear abuse of the discretion vested in the trial court....”
Id. at 501, quoting Lomenick v. Schoeffler, 200 So.2d 127, 132 (La.1967).

QUANTUM: JESSE BRUMFIELD

Defendant, USAA, appeals the jury award of $15,000 to Jesse Brumfield for future medical expenses.
The record reflects that Mr. Brumfield has an incisional hernia as a result of surgery necessitated by the accident. Dr. Kaplan, Mr. Brumfield’s treating physician, testified by deposition that Mr. Brumfield would require surgery to repair the hernia. Dr. Kaplan stated the surgery would require an anesthesiologist, lab work, and probably overnight hospitalization. He further stated that his surgery fee would range from $1,500 to $2,000. Additionally, he explained that Mr. Brumfield would not be able to work for six weeks following the surgery.
After reviewing the evidence with regard to Mr. Brumfield’s future medical needs, we cannot conclude that the award is so excessive as to constitute an abuse of discretion.

QUANTUM: TIM SMITH

Plaintiffs appeal the general damage award to Tim Smith.
The jury awarded Tim Smith $11,700 past medical expenses, $2,500 future medi *879 cal expenses, $10,000 for past and future mental and physical pain and suffering, $1,000 for permanent scarring and disabling injuries, and $2,000 for future lost earnings and earnings capacity.
Plaintiffs argue that it is an abuse of discretion to award a general damage award that is less than the special damage award. Plaintiffs further argue that the medical bills indicate the physical pain, suffering, and inconvenience which Tim Smith has experienced, and suggest that an award of “at least twice the medical bills would be the lowest amount within the reasonable discretion of the jury in this instance.”
After reviewing the evidence with regard to the damage sustained by the plaintiff, we find no abuse of discretion in the award of general damages.
CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed against the defendant.
AFFIRMED.